The opinion of the Court was delivered by
Tilghman C. J.
This case comes before us on a citation of the plaintiffs, to shew cause of special bail. As cause of bail, the counsel for the plaintiffs has produced the affidavit of John Walker, one of the plaintiffs, by which the debt is positively sworn to, taken before James Norris, styling himself a magistrate of the county of Lancaster in England, and the signature of the said Norris and his authority to administer an oath, have been sufficiently verified by other evidence. The question is, whether this affidavit be sufficient to hold the defendants to special bail, and a very important question it is; for it is contended by the counsel for the defendants, that no oath made in a foreign country, however positive, is sufficient to hold to bail, unless accompanied *62 with some written acknowledgment by the debt of the defen.. dant. If the law be so, it may create great embarrassment to foreigners, and be injurious to the commercial credit of tbe State. We have therefore endeavoured to ascertain the groun<^ on which the rule, set up by the defendants’ counsel, is supported. We have no Act of Assembly or rule of Court on the subject. But the authority of the case of Taylor v. Knox, decided by the late Ch. J. Shippen, when President of the Court of Common Pleas, in the year 1785, is relied on. Of course, we have examined that case thoroughly; and it appears, that the President found himself embarrassed by a practice, which had been established before he came on the bench, of refusing special bail, unless the debt were sworn to before one of the Judges of the Court, agreeably to the Stat. 12. Geo. I. This practice he considered as illegal, because that Statute had never been extended to this State, before the revolution. The consequence ought to have been, the establishment of a practice, agreeable to the general principles of commercial law and the usage of the most enlightened nations. The mind of President Shippen was inclined to liberality, and we may plainly discover a struggle between his own view of the law, and his wish t® avoid too wide a departure from the sentiments of his brethren who were not lawyers. Accordingly, he made a compromise, by striking out a middle way, as he called it, between the Statute 12. Geo. I., which required an affidavit before one of the Judges of the Court, and the general principles of law which admitted an affidavit before a notary public, or magistrate, of a foreign country. President Shippen was aware, that in England, before the Statute of 12. Geo. I. an affidavit before a notary public of a foreign country, was received in proof of cause of bail; for he cites a case to that purpose, reported in 8 Mod. 323, (11. Geo. I.) But he does not seem to have understood, that the same evidence has been received, since that Statute. Nevertheless, it certainly has. For, the construction put upon the Statute by the English J udges was, that although it prohibited a plaintiff from arresting the defendant and holding him to bail without an affidavit before a Judge of the Court, of his own authority, and without a Judge’s order, yet it did not restrain a Judge from making an order to hold, *63 to bail, on an affidavit made in a foreign country. The reason why it is presumed, that this had escaped the President is, that he savs, the Court of Common Pleas desired to keep • * % . - • i up a reciprocity between this country and England, and therefore required an affidavit before a Judge. But there could be no reciprocity if one country admitted an affidavit before a foreign magistrate and the other did not. But we may see clearly, which way the judgment of President Shippen, who was a man of large views, inclined; for in that very case of Taylor v. Knox, he held the affidavit before the lord mayor of London, a sufficient ground for an attachment, and even in cases of capias, where a written acknowledgment of the defendant was required, he thus expresses himself: — “ This rule, however, affects the inhabitants of other countries as well as England, and it may possibly be found necessary at some future time to make an alteration in it, more conformable to the general law on these subjectsHad he been now living, I make no doubt that he would have thought that future time was now come, especially had he been assured, (as we have been by very satisfactory evidence,) that in the year 180/, the Court of King’s Bench in England, ordered special bail, on the affidavit of a citizen of the United States, made before a magistrate in Paris, proving a debt contracted in the United States. Our commerce has - increased prodigiously since the year 1/85, when the rule was laid down in the case of Taylor v. Knox, and in order to do justice, it is necessary that the law of evidence, in commercial cases, should keep pace with the progress of business. This Court is unfettered by the rule of the Common Pleas, and after diligent search, we have found no case, either reported or in manuscript, in which we have decided that an affidavit made in a foreign country, should not be received. Affidavits made in óther States have always been received without scruple, and I understand that sub silentio it has been customary to demand special bail on affidavits made in Europe. It is time the matter should be settled. We have considered it deliberately, and are of opinion, that in the case before us, the plaintiffs have shewn good cause for special bail. It should be remarked, that in the present case, an acknowledgment under the hand of the defendant, could never be expected ; *64 because he received the money without the approbation or knowledge of the plaintiffs. But our opinion is not founded on that special circumstance, — it takes broader ground. We think that the evidence would have been sufficient, had it beeI1 3 CaSe °f S°°dS S°ld-
Rule discharged.